**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
-------------------------------------------------------X
In re:

KARA HOMES, INC., et al.,

                                      Debtors.
-------------------------------------------------------X
KARA HOMES INC., et al.,

                                      Plaintiffs.

                v.

NATIONAL CITY BANK, et al.,

                                      Defendants.
-------------------------------------------------------X

Chapter 11

Case No:
06-19626 (MBK)

Administratively
Consolidated Proceedings

Adv. Pro.:
06-03101 (MBK)

**OPINION**

**APPEARANCES:**

David L. Bruck, Esquire
Greenbaum, Rowe, Smith, et al.
PO Box 5600
Woodbridge, NJ 07095
Attorneys for the Debtors

Thomas R. Dominczyk, Esquire
Maurice & Needleman, PC
5 Walter E. Foran Blvd.
Suite 2007
Flemington, NJ 08822
Attorneys for Provident Bank of New Jersey

Timothy P. Duggan, Esquire
Stark & Stark, P.A.
Princeton Pike Corporate Center
993 Lenox Drive, CN 5315
Princeton, NJ 08543-5315
Attorneys for Yardville National Bank

Michael Kahme, Esquire
Hill Wallack
202 Carnegie Center
Princeton, NJ 08543-5226
Attorneys for Amboy National Bank

Douglas J. McGill, Esquire
Drinker, Biddle & Reath
500 Campus Drive
Florham Park, NJ 07932-1047
Attorneys for WCP Real Estate Strategies Fund

Marc D. Miceli, Esquire
Carella, Byrne, et al.
5 Becker Farm Rd.
Roseland, NJ 07066
Attorneys for TD Banknorth, NA

Fran B. Steele, Esquire
Office of the US Trustee
One Newark Center
Suite 2100
Newark, NJ 07102-5504
U.S. Department of Justice

Daniel Stolz, Esquire
Wasserman, Jurista & Stolz
225 Millburn Ave., Suite 207
P.O. Box 1029
Millburn, NJ 07041-1712
Attorneys for Credit Suisse Loan Funding, LLC

Warren A. Usatine, Esquire
Cole, Schotz, Meisel, Forman & Leonard
25 Main Street
PO Box 800
Hackensack, NJ 07602-0800
Attorneys for the Official Committee of Unsecured Creditors

Dean C. Waldt, Esquire
Ballard Spahr Andrews & Ingersoll
Plaza 1000 at Main Street
Suite 500
Voorhees, NJ 08043
Attorneys for National City Bank

Jack M. Zackin, Esquire
Sills Cummis Radin Tischman Epstein &
One Riverfront Plaza
Newark, NJ 07102
Attorneys for Bank of America, N.A.

---

**MICHAEL B. KAPLAN, U.S.B.J.**

**MEMORANDUM DECISION**

**I. JURISDICTION**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

**II. FACTS AND PROCEDURAL HISTORY**

On October 5, 2006 (the "Petition Date"), Kara Homes, Inc. ("Kara") filed with the Court a voluntary petition under Title 11, Chapter 11, United States Code (the "Bankruptcy Code").

3

Subsequently, on October 9 and 10, 2006, November 17, 2006, December 8, 2006, January 12, 2007, February 2, 2007 and February 13, 2007, thirty-two (32) of the Debtor's affiliates (the "Affiliated Debtors," and collectively with Kara, the "Debtors") filed voluntary petitions under Chapter 11 of the Bankruptcy Code. The Affiliated Debtors own separate real estate development projects for the construction of single family homes and condominiums.[1] Kara owns ninety percent of each of the Affiliated Debtors and Zuhdi Karagjozi owns the remaining ten percent interest. Each of the Affiliated Debtors was identified as a "single asset real estate case" by having a check-mark placed in the appropriate box on the face page of the voluntary petition.

On October 17, 2006 and January 9, 2007[2], the Court entered Orders directing joint administration of Kara's bankruptcy case and the Affiliated Debtors' bankruptcy cases, for procedural purposes only, and designating Kara's bankruptcy case as the lead case. The Debtors'

---

[1] The Kara Homes, Inc. affiliates that filed petitions pursuant to Chapter 11 of Title 11 of the United States Code are: Bergen Mills Estates, LLC, 06-19758; Country Club Estates by Kara, LLC, 06-19744; Estates at GallowayWoods, LLC, 06-19746; Hartley Estates by Kara, LLC, 06-19759; Horizons at Birch Hill, LLC, 06-19767; Horizons at Woodlake Greens, LLC, 06-19745; Horizons at Woods Landing, LLC 06-19760; Kara at Buckley Estates, LLC, 06-19742; Kara at Crine West, LLC, 06-19770; Kara at Dayna Court, LLC, 06-19743; Kara at Glen Eyre, LLC, 06-19765; Kara at Hawkins Ridge, LLC, 06-19757; Kara at Lacey, LLC, 06-19738; Kara at Mt. Arlington I, LLC, 06-19780; Kara at Mt. Arlington II, LLC, 06-19782; Kara at Navasink, LLC, 06-19737; Kara at Park Ridge Estates, LLC, 06-19783; Kara at The Tradewinds, LLC, 06-19741; Sterling Acres at Monroe, LLC, 06-19774; The Landings at Manahawkin, LLC, 06-19740; Winding Run Estates by Kara, LLC, 06-19764, Woodland Estates at North Edison LLC, 06-21512, Kara at Monroe, LLC, 06-21513; Kara Homes at Enclave II, LLC, 06-22341, Kara at Atlantic Hills, LLC, 07-10489; Horizons at Shrewsbury Commons, LLC, 07-11496; Forest Edge Estates by Kara, LLC, 07-11941; Kara at Farrington Ridge, LLC, 07-11939; Limerick Estates by Kara, LLC, 07-11937; Kara at Orchard Meadows, LLC, 07-11932; Summerfield Estates by Kara, LLC, 07-11928; and Kara at Freehold, LLC, 07-11924.

[2] On February 20, 2007, the Debtors filed a Motion for Expanded Joint Administration to include the Affiliated Debtors that filed on and after January 12, 2007. The Motion is scheduled to be heard on March 19, 2007 at 1pm.

4

bankruptcy cases have not been substantively consolidated. Since the filing dates, the Debtors have remained in possession of their assets as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

On November 16, 2006, an Order Authorizing the Debtors to Enter Into Agreement With Traxi LLC to Provide Crisis Management Services (the "Traxi Order") was entered. Pursuant to the Traxi Order, Perry Mandarino ("Mandarino") was authorized to serve as Debtors' Chief Restructuring Officer and Anthony Pacchia ("Pacchia") serves as Chief Financial Officer.

On the same date that the Court entered the Traxi Order, a hearing was held on the interim approval of Debtors' Motion for an Order authorizing the Debtors' to incur post-petition secured indebtedness with Bear Stearns Investment Products Inc. ("Bear Stearns"). Bear Stearns was later replaced as DIP lender by WCP Real Estate Strategies Fund, L.P. ("WCP").

In addition to the aforementioned check-mark on the face of each voluntary petition indicating that each of the Affiliated Debtors constituted a single asset real estate case, each Affiliated Debtor, for which a petition was filed in 2006, also listed itself as a single asset real estate entity in response to question 18b on each Statement of Financial Affairs ("SOFA"). Question 18b requires the debtor to identify which of the debtor entities, if any, listed in question 18 of the SOFA, are single asset real estate entities. Subsequently, each of the Affiliated Debtors filed Amended SOFA's and a Verified Statement Regarding Debtor's First Amendment to Chapter 11 Voluntary Petition and Schedules, amending the petitions and schedules to reflect that the Affiliated Debtors were not single asset real estate entities.

On December 19, 2006 the Affiliated Debtors filed, against pre-petition secured construction lenders ("Lenders"), a Complaint for Declaratory Judgment that the Debtor

5

Affiliates are not Single Asset Real Estate Entities pursuant to 11 USC § 101(51B) and 11 USC § 362(d)(3) (the "Adversary Proceeding")[3]. Simultaneously, the Debtors filed a Motion for an Order Extending the Date by Which the Debtor Affiliates Must File Plans of Reorganization or Commence Monthly Payments to Pre-Petition Secured Creditors Until 60 Days Following the Court's Determination of the Debtors' Declaratory Judgment (the "Motion") seeking to stay their obligations under 11 USC § 362(d)(3) to file a Plan or begin making interest payments until sixty (60) days after the Court determines the issue of whether the Affiliated Debtors are single asset entities.

At the December 26, 2006 hearing on the Motion, the Court imposed a schedule for motions and cross-motions for summary judgment to be filed on the issue of whether the Affiliated Debtors are single asset cases. Several of the defendant Lenders moved for summary judgment[4]. Those Lenders and the Affiliated Debtors to which their liens attach are as follows:

| **Pre-petition Secured Party** | **Debtor Affiliate** |
|---|---|
| Amboy National Bank | Horizon at Birch Hill, LLC |
| | Kara at Crine West, LLC |
| | Kara at Mt.Arlington II, LLC |
| | Kara at Navasink, LLC |
| | Kara at Tradewinds, LLC |

---

[3] The Complaint was subsequently amended to add Credit Suisse and substitute WCP Real Estate Strategies Fund LP for North Fork Bank.

[4] Bank of America was the first of the Lenders to file it's Motion for Summary Judgment and nearly all other Lenders joined in and/or adopted the arguments set forth therein. On the scheduled hearing date for this matter, Bank of America withdrew its Motion having settled its disputes with the Debtors, pending Court approval. Since most other Lenders relied on the arguments in Bank of America's Motion, those arguments will be considered incorporated by reference into the remaining Lenders' papers. Thus, this matter remains ripe for determination by this Court at this time.

| | |
|---|---|
| Provident Bank of New Jersey | Limerick Estates, LLC |
| | Kara at Orchard Meadows, LLC |
| TD BankNorth, N.A. | Bergen Mills Estates, LLC |
| | Horizons at Woodlake Greens, LLC |
| National City Bank | Kara at the Glen Eyre, LLC |
| | Kara at Hawkins Ridge, LLC |
| | The Landings at Manahawkin, LLC |
| | Winding Run Estates by Kara, LLC |
| WCP Real Estate Strategies Fund LP | Kara at Mt. Arlington I, LLC |
| Yardville National Bank | Estates at Galloway Woods, LLC |
| Credit Suisse Loan Funding, LLC | Kara at Buckley Estates, LLC |

The Debtors responded and cross-moved for summary judgment on the same issue. The Committee filed a brief in opposition to the Lenders and in support of the Affiliated Debtors. Not all named Defendants filed a motion for summary judgment but the foregoing relief shall be binding on all parties to the litigation.

The Affiliated Debtors argue that they are not single asset real estate entities as defined in 11 U.S.C § 101(51B). Instead, the Affiliated Debtors assert that each separate affiliate operates a business sufficiently active so as to be excluded from §101(51B). As described in the Cross-Motion, "it is the business of each Affiliated Debtor to acquire developable land, to design homes and/or condominiums suitable to that land, to arrange for the construction of these homes

and/or condominiums and then to market and sell them to generate cash." (Debtors' Cross-Motion at p. 5)  The Affiliated Debtors "must obtain site plan approvals or register with the Department of Community Affairs and file Public Offering Statements." Id.  Marketing, sales and construction are handled from a construction trailer and model located on each property.  Employees are detailed to particular properties by Kara Homes and those employees conduct the closings and monitor the work that needs to be completed on each home.  The Affiliated Debtors maintain that in addition to all these tasks, the Affiliated Debtors build the common space, amenities and roadways.  Thus, the Affiliated Debtors assert they are a business and not solely engaged in operating the real property.

In contrast, the Lenders argue that each of the Affiliated Debtors own a single real estate project that constitutes its sole asset and conducts no business operations other than the improvement and sale of real estate.  Therefore, as the Lenders assert, since the Affiliated Debtors derive all of their revenue from improving and selling its real estate, the Affiliated Debtors, as single asset real estate entities, are required to abide by the "plan or payment" deadline outlined in Section 362(d)(3).

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where " the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and  the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56©. As the Supreme Court has indicated, "Summary Judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather an integral part of the Federal Rules as a whole which are designed to secure the just, speedy and inexpensive

determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, the judge's function is to determine if there is a genuine issue for trial." Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 637 (3d Cir.1993).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Huang v. BP Amoco Corp., 271 F.3d 560, 564 (3d Cir.2001) ( citing Celotex Corp., supra, 477 U.S.at 323). In determining whether a factual dispute warranting trial exists, the court must view the record evidence and the summary judgment submissions in the light most favorable to the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Issues of material fact are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. An issue is genuine when it is "triable," that is, when reasonable minds could disagree on the result. Matsushita, 475 U.S. at 587.

All parties have stipulated that there are no genuine issues of material fact and that the record before the Court is fully developed so as to permit the Court to resolve the issues on summary judgment.

### IV.    SINGLE ASSET REAL ESTATE

Prior to the Bankruptcy Reform Act of 1994 (the "1994 Act"), the Bankruptcy Code lacked an express provision for single asset real estate case. The 1994 Act provided special treatment of single asset real estate by defining the term "single asset real estate in Bankruptcy Code Section 101(51B) and by placing single asset real estate cases on an expedited

reorganization track through the enactment of Bankruptcy Code § 363(d)(3)." In re Kkemko, Inc., 181 B.R. 47 (Bankr. S. D. Ohio 1995); H.R. Rep. 103-835, 103 Cong.2d Sess. (1994). When first enacted, the definition of single asset real estate included a limitation to debtors with secured debts of no greater than $4 million. That limitation was removed as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Thus, Section 101(51B) of the Bankruptcy Code currently defines "single asset real estate" as:

> real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental.

The Court in In re Philmont Dev. Co., supra, noted that "single asset real estate" encompassed a real estate project "owned by an entity whose sole purpose was to operate that real estate with monies generated by the real estate." Philmont, supra 181 B.R. at 224 (Bankr. E.D.Pa. 1995). In Philmont, the court identified four criteria for a Chapter 11 case to be considered a single asset real estate case:

> Section 101(51B) enumerates four criteria which must exist before a bankruptcy case falls within the scope of section 101(51B). First, real property constituting a single property or project, other than residential real property with fewer than four residential units, falls within the scope of 101(51B). Second, that real property must generate substantially all of the income of the debtor. Third, the debtor must not be involved in any substantial business other than the operation of its real property and the activities incidental thereto. Fourth, the debtor's aggregate non-contingent liquidated secured debt must be less than $4,000,000.

<u>Id</u> at 223.

The last of the four criteria was eliminated as a result of the BAPCPA. With respect to the first criteria, there is no dispute that each of the thirty-two Affiliated Debtors are single real estate projects. Each Affiliated Debtor consists of a developable piece of land and a housing plan that rests upon it. Thus, the first criteria is satisfied.

The second requirement, that the real property must generate substantially all of the income of the debtor, is also satisfied. At the hearing for interim approval of the DIP Financing, Mandarino, testified as follows:

> Q: Do you know how the debtors derive their revenue?
> A: Yes
> Q: And how do they derive revenue?
> A: From the sale of homes, primarily.
> Q: Are there any other ways that the debtors derive revenue.
> A: Well, they could sell - - they could sell land. They could buy land and then flip it.
> Q: So, essentially, the debtors derive revenue through sale of homes or sale of other real estate?
> A: Primarily, yes.
> Q: Do the debtors also derive revenue from the proceeds of loans received from lenders?
> A: No.
> Q: Do the debtors receive funds necessary for operations from advances made by lenders?
> A: Yes
> Q: Are you aware of any other basis besides advances from lenders or sales of assets that the debtors would derive funds necessary to pay post-petition employee wage claims?
> A: Theoretically or actually?

> Q: Actually.
>
> A: I'm not aware of how they got that money. I don't know.

Transcript of Hearing, November 16, 2006 at pp. 71-72 ¶ 14-25, 1-11.

There has not been any testimony, evidence, arguments or otherwise that contradict Mandarino's testimony that the Affiliated Debtors primary source of income, if not it's only source, is "from the sale of homes." Instead, pursuant to the SOFA for each of Affiliated Debtors, in response to Question #1 regarding the income from operation of business, Mandarino certifies that the income for 2004 and 2005 was derived from "combined sales revenue for all entities." No other revenue stemming from any other operation of the Affiliated Debtors is listed therein. It is clear that the Affiliated Debtors derive substantially all of their income through the sale of the real property. Thus, the second criteria is likewise satisfied.

The true point of contention in this matter rests with the third criteria set forth in Philmont, supra, whether the debtor is involved in any substantial business other than the operation of its real property and activities incidental thereto. The Affiliated Debtors argue that they are not single asset real estate entities because substantial business other than the business of operating the real estate and activities incidental thereto are conducted on the property of each Affiliated Debtor. The Debtors maintain that in addition to holding the real estate, each affiliate researches and purchases developable land, conducts planning and construction of homes, markets and sells the homes and maintains each development. These activities, according to the Affiliated Debtors, constitute "substantial business" and not "activities incidental" to the operation of the business. The Affiliated Debtors rely on Kkemko, supra, to support this contention. In Kkemko, the debtor operated a marina that not only provided moorings for boats

but the storage, repair and winterization of boats, showers, food, fuel, a pool and activities for boaters. The Court, noting the distinction established in In Re Mayer Pollack Steel Corp. 174 B.R. 414 (Bankr. E. D. Pa. 1994) between a single asset real estate case and one in which a business is being conducted, found that the marina did not come within the definition of "single asset real estate." Kkemko, 181 B.R. at 51. The Court found that, in general, the business of a marina was to rent moorings and the evidence had established that the debtor's business was something more than just the rental of moorings. Indeed, the sale of food and fuel, the availability of a pool and the maintenance of boats are not activities incidental to the provision and rental of moorings.

Similarly, other courts have followed a similar analysis, in declining to find a "single asset real estate" case where the real estate was not just a passive investment, but the site of various income producing activities. See, In re Prairie Hills Golf & Ski Club, 255 B.R 258 (Bankr. D. Neb. 2000) (Debtor is not single asset real estate where it builds and sells residences, constructs roads to residences, golf and ski areas, removes snow from golf and ski area, sells liquor in the clubhouse and leases golf and ski area to third party); Centofante v. CBJ Dev. Inc., (In Re CBJ Dev. Inc.), 202 BR 467 (9th Cir. BAP 1996) (hotel is not single asset real estate because bar, gift shop and restaurant constitute significant other business); In Re Larry Goodwin Golf, Inc., 219 BR 391 (Bankr. M.D.N.C. 1997) (golf course, golf cart rentals, pool, concessions and undeveloped property for sale constitute "substantial business" and not holding property solely for income); In re CGE Shattuck LLC, 1999 WL 33457789 (Bankr D. N. H. 1999) (not single asset case where real property does not generate substantially all of the debtor's gross income and percentage of revenues are derived from pro shop, golf rentals and golf-related services); In re Whispering Pines Estates, Inc., 341 BR 134 (Bankr. D.N.H. 2006) (operation of a

hotel is sufficiently active in nature to constitute a business other than mere operation of property). From these cases, it is palpably clear that a "single asset real estate" case is one in which the debtor performs functions intrinsic to owning and developing the real estate and not one where the debtor generates income from other activities not incidental thereto.

The Affiliated Debtors are in the business of constructing and selling single family homes on the parcels of real estate owned by the Affiliated Debtors. In order to build and sell homes, it is often necessary to acquire the land on which to build the homes, and plan the community in which they lie; likewise, it is necessary to market those homes for sale and maintain the properties. All of the activities identified by the Debtors as reflective of "business operations" are merely incidental to the Affiliated Debtors efforts to sell the these homes or condominium units and do not constitute substantial business, as illustrated in Kkemko. Thus, the Court finds that the Affiliated Debtors fall within the definition of "single asset real estate" debtors and, as such, 11 USC § 362(d)(3) applies.

In reaching it's conclusion, the Court has taken a pragmatic approach to gauging the substantiality of the Debtors' business operations unrelated to the real estate. Simply put, the Court queries whether the nature of the activities are of such materiality, that a reasonable and prudent business person would expect to generate substantial revenues from the operation activities- separate and apart from the sale or lease of the underlying real estate. By way of example, with a country club or hotel, one could reasonably anticipate generating significant revenues from catering events, operating restaurants or casinos, providing services or selling merchandise-whether or not the operator was the owner of the real estate. In marked contrast, no

one could reasonably expect to generate income from the activities undertaken by the Affiliated Debtors if the eventual sale of the real estate were not possible.[5]

**V. STAY RELIEF**

11 USC § 362(d)(3) provides for expedited relief against debtors determined to be single asset real estate entities. That section states:

> **(d)** On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay-
>
> **(3)** with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later--
>
>> **(A)** the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or
>>
>> **(B)** the debtor has commenced monthly payments that--
>>
>>> **(i)** may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and
>>>
>>> **(ii)** are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate; or

---

[5] Clearly, the planning, design, marketing, maintenance and other activities in which the Affiliated Debtors are engaged, are examples of such services which can generate income when performed for third parties; however, this is not the case here, where the Debtors do not perform such activities for other home builders. It follows suit, therefore, that Kara, which does engage in these activities for the affiliates, but does not own real estate, cannot be classified as a "single asset real estate" debtor.

Pursuant to 11 USC § 362(d)(3), the Affiliated Debtors, as single asset real estate debtors, have thirty (30) days from the entry of the Order on the within motions to either file a plan of reorganization or commence making interest payments to the secured lenders, since the initial ninety (90) day period has long since expired.  Accordingly, Defendants' motions for summary judgment are granted and Debtors' cross-motion for summary judgment is denied.  Additionally, the Debtors' motion seeking an extension of time for filing the plans is also denied.  Appropriate orders will be entered.

March 12, 2007

/s/ Michael B. Kaplan
Honorable Michael B. Kaplan
United States Bankruptcy Judge